**Sarah S. WAGNER, Appellant**

v.

**Charles A. WAGNER, Appellee.**

**No. 16187.**

United States Court of Appeals District of Columbia Circuit.

Argued April 12, 1961.

Decided June 22, 1961.

Mr. W. Cameron Burton, Washington, D. C., with whom Mr. H. George Schweitzer, Washington, D. C., was on the brief, for appellant.

Mr. John J. Pyne, Washington, D. C., for appellee.

Before BAZELON, WASHINGTON and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

This case presents questions concerning the validity of substituted service, and questions as to jurisdiction, in a suit against a former husband to enforce support for a wife and a minor son and to subject a certain house, in which the wife

asserts an interest, to such support payments.

Appellant filed her suit in the District Court. Her complaint alleges, *inter alia*, that she and the appellee-husband were married in 1939 and lived together in the District of Columbia until 1953, when appellee left her and moved to Ohio, where he presently resides; that he obtained an *ex parte* divorce decree from an Ohio court in 1958, pursuant to which the custody of their minor son was awarded to her, and appellee was ordered to pay $15.00 per week for the child's support; that no provision was there made for her support; that she is unable to support herself and the child and is in debt; that the parties lived while married in a house at 3929 Ames St., N. E., in the District of Columbia, which is shown by the land records to be owned by appellee; that appellant assisted in the purchase of the property by making some of the payments on the trust note; and that the appellee contemplates selling the house. She prays for a judgment requiring appellee to pay reasonable support for herself and the minor son, for an injunction against a sale of the house by appellee, for a determination of her property rights in the real estate, and for an order subjecting the realty to the support payments requested.

The complaint was served personally upon appellee at his residence in Ohio. He entered a special appearance and moved to quash service of process on the ground that the action is *in personam* and that personal service upon him outside the District is not authorized. The District Court granted the motion to quash service, and upon its own motion, dismissed the complaint for want of jurisdiction over the subject matter. The present appeal was taken after appellant's motion for rehearing was denied.[1]

### I.

We first turn to the jurisdictional questions raised. It is clear that exclusive jurisdiction over the subject matter of the complaint in this case, filed on April 7, 1960, was in the Domestic Relations Branch of the Municipal Court rather than in the District Court, under Section 11–762 of the D.C.Code (1960). That section specifically so provides with respect to civil actions to enforce support of minor children and of a wife and, in such actions, specifically gives the Branch the power to determine and adjudicate rights to real property. Cf. David v. Blumenthal, 110 U.S.App.D.C. 272, 292 F.2d 765, decided June 1, 1961. For purposes of jurisdiction in suits to enforce support, a divorced wife is to be deemed a wife. See Hopson v. Hopson, 1955, 95 U.S.App.D.C. 285, 292, 221 F.2d 839, 846, where we indicated that the right to support is one of the rights of the wife acquired through marriage which will survive an *ex parte* divorce decree. See also Vanderbilt v. Vanderbilt, 1957, 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456. While Hopson dealt with the powers of the District Court as they existed in 1955, such powers now have been transferred to the Domestic Relations Branch of the Municipal Court. See Thomason v. Thomason, 1959, 107 U.S. App.D.C. 27, 274 F.2d 89; David v. Blumenthal, supra.

We conclude, therefore, that this complaint should have been brought in the Domestic Relations Branch of the Municipal Court. But it does not follow that dismissal of the suit was the course which the District Court should have taken. In 1959, under very similar circumstances, we remanded a suit for divorce and division of real property to the District Court "with directions to vacate its order dismissing the cause for lack of jurisdiction and to transfer the case to the Municipal Court for trial in that tribunal." Harris v. Harris, 1959, 106 U.S.App.D.C. 282, 272 F.2d 511, 512. Implicit in our decision was the holding that service of process in the District Court in a domestic relations case within

[1]. For purposes of the appeal we must of course treat the factual allegations of the complaint as established.

the exclusive jurisdiction of the Domestic Relations Branch of the Municipal Court was sufficient to commence the action, and that its transfer to the latter court would be the proper course for the District Court to follow. The reasons for this are clear. Jurisdiction over domestic relations was only recently transferred to the Branch, and all problems relating to the extent of the jurisdiction transferred have not yet been settled. At least in the transitional period, courts should not dismiss suits which can properly be transferred. There can be no valid objection to transfer of cases of this sort since the transfer will not affect any substantive right of either party but will merely alter the tribunal which will hear and adjudicate those rights. Cf. David v. Blumenthal, supra.

If, therefore, service of process was effected in the District Court, this case should be transferred to the Municipal Court.

## II.

■■ We turn to the question whether service was properly effected. We note, initially, that part of the relief sought by appellant was support for herself and the minor child, an action in personam. Since the former husband was served outside the District of Columbia, an award of support would be "void except as to property within the jurisdiction of the court which has been specifically proceeded against" in the divorce or maintenance action. Gaines v. Gaines, 1946, 81 U.S.App.D.C. 260, 262, 157 F.2d 521, 523. The suit here seeks, in addition to support, to subject the former marital home in the District to the support payments awarded, and prays for a determination of appellant's property rights in the home and an injunction

against its sale. Only by resort to this property (apparently the husband's only known property within the jurisdiction) would a support award be immediately enforceable. Thus, the immediate object of the suit was to establish and enforce rights or claims to the real property within the jurisdiction of the court. As such, Section 13–108 of the D.C.Code (1951) authorized the use of service by publication, or service outside the District.[2] And we deem this to mean that the service upon the appellee, as so authorized, will enable the trial court to determine not only the wife's interest in the property but also, after hearing evidence, to provide for payment out of the real property of any support payments to which it finds the appellant and the minor son are entitled.

■ The appellee-husband contends, however, that something more than substituted service is required to give the trial court the power to enforce real property rights in a suit for support, i. e., that the real property must be attached at the time of filing such a suit. He cites Buchanan v. National Savings & Trust Co., 1944, 79 U.S.App.D.C. 278, 146 F.2d 13, 15, as requiring this. That case involved a suit against a former husband to establish an interest, on behalf of the former wife and a minor child of the divorced parents, in a spendthrift trust fund of which the husband-father was beneficiary. We held that the testator-settlor of the fund intended the child to be provided for out of the income of the trust fund, that the child therefore had a property interest in the fund, which was within the District, that the trial court should determine the extent of the provision to be made for the child from the trust income and that under Section

2. Section 13–108 reads as follows:
    "Publication may be substituted for personal service of process upon any defendant who cannot be found and who is shown by affidavit to be a nonresident, * * * in all actions at law and in equity which have for their immediate object the enforcement or establishment of any lawful right, claim, or demand to or

against any real or personal property within the jurisdiction of the court.
    "Personal service of process may be made by any person not a party to or otherwise interested in the subject matter in controversy on a nonresident defendant out of the District of Columbia, which service shall have the same effect and no other as an order of publication duly executed."

13–108 service by publication on the defendant-father was sufficient to give it authority to do so. However, we found no intent on the part of the testator to make provision for the wife out of the trust fund, and held that she had no property interest in the fund. With respect to her claim arising from the general right to support, we said:

"While a spendthrift trust may under some circumstances be subjected to the obligation to support a wife or child, the enforcement of such an obligation would require either personal service on John Buchanan or an attachment of his equitable interest in the fund after the execution of a bond."

We cited as authorities for this statement Section 16–301 of the D.C.Code (1940), and Pennoyer v. Neff, 1877, 95 U.S. 714, 24 L.Ed. 565.

Insofar as the appellant in this case is seeking an adjudication of her property interest in the home arising from her contributions to its purchase price, her claim is not distinguishable from the claim of the child to an interest in the trust fund in Buchanan, except that it relates to real rather than personal property, and under that decision substituted service was sufficient to give the District of Columbia courts power to adjudicate her claim in this regard.

For the following reasons we also think that substituted service permitted the adjudication and enforcement of the claims made against the former husband's interest in the realty, as distinguished from appellant's own personal interest in the realty.

Pennoyer v. Neff, supra, was concerned with the effect of a money judgment rendered by default in a suit on contract in a state court against Neff, a non-resident of the state, who was served by publication and entered no appearance. Subsequent to the default judgment, real estate owned by Neff within the jurisdiction was sold under an execution. The Supreme Court held that the judgment was void because the trial court lacked jurisdiction to render a personal judgment against Neff and that the execution sale made pursuant to the void judgment passed no title. The suit itself had not been in any sense a proceeding against the realty, and the Court noted that the real property sold under the invalid judgment had not been brought under the jurisdiction of the trial court by attachment, seizure, or in any other equivalent way,[3] and that "Its first connection with the case was caused by a levy of the execution." See 95 U.S. at page 720.

■ ■ The principles stated in the Pennoyer decision have no application where the action is one proceeding directly against real estate. It has long been established that "a state has power by statute to provide for the adjudication of titles to real estate within its limits as against non-residents who are brought into court only by publication." Arndt v. Griggs, 1890, 134 U.S. 316, at page 327, 10 S.Ct. 557, at page 561, 33 L.Ed. 918. This is because an "owner of real estate, who is a non-resident of the state within which the property lies, cannot evade the duties and obligations which the law imposes upon him in regard to such property, by his absence from the State," and service by "publication is 'due process of law' as applied to this class of cases." Huling v. Kaw Valley Railway, 1889, 130 U.S. 559, 563, 564, 9 S.Ct. 603, 605, 32 L.Ed. 1045. See also Grannis v. Ordean, 1914, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363. In Lynch v. Murphy, 1896, 161 U.S. 247, 16 S.Ct. 523, 40 L.Ed. 688, a decree rendered in the District of Columbia in a suit to cancel

---

3. In Ulrich v. Ulrich, 1883, 3 Mackey 290, 14 D.C. 290, a predecessor appellate court in this District applied the *lis pendens* doctrine to a wife's suit for divorce and alimony wherein the complaint asserted that the husband owned certain described real estate, and asked that it be subjected to her claim for alimony. Evidently the court regarded seizure, attachment, or the issuance of a restraining order, as being unnecessary to perfect the *lis pendens* so created. No problem of service of process was there presented, as the husband was a resident of the District.

a deed of trust on land was held not to be void even though the defendant was not personally served, since a statute enacted by Congress for the District permitted service by publication. As already indicated, Section 13–108 of the Code, the District statute now in force, authorizes service by publication where (as here) the suit seeks to enforce claims against real property located in the District. The statute does not require that the property proceeded against be seized or attached. It is thus plain that the substituted service in this case gave the courts of the District of Columbia the power to render judgment with respect to the real estate proceeded against in the complaint.[4]

The view just stated has long been applied throughout the country in domestic relations cases. At least when authorized by statute, substituted service upon a non-resident defendant, without attachment or seizure of property, will give jurisdiction to render a decree for alimony or maintenance which is binding upon realty (and indeed even personalty) belonging to the defendant and within the jurisdiction of the court, when the property has been specifically described and proceeded against in the complaint. Some of the cases so holding are set out in the margin.[5] Public policy requires this result: it would be intolerable to allow a woman and minor child to become public charges simply because

4. Section 13–108 also authorizes service by publication where the object of the suit is to establish and enforce claims against personalty located in the District. Buchanan involved a suit of that kind. We express no views about the decision in that case, except to note that Pennoyer v. Neff, there relied upon as requiring an attachment in addition to service by publication, did not involve a suit seeking to proceed directly against personal property in the jurisdiction. Moreover, Section 16–301 of the Code (1951), also cited as requiring an attachment, authorizes, but does not in terms require, an attachment before judgment under certain circumstances in three types of cases: actions for the recovery of specific personal property, or for a debt, or for damages for the breach of a contract, express or implied. The language of Section 16–301 suggests strongly that the actions for debt or for damages for breach of contract referred to therein are those where the debt or damages are liquidated or ascertainable in amount: viz., the plaintiff's affidavit must state the "amount" of the debt or the "actual damage resulting" from breach of contract, and a bond must be given in twice the amount of the claim. Cf. Hoover v. Hathaway, 1892, 9 Mackey 591, 20 D.C. 591; Goldsborough v. Orr, 1823, 8 Wheat. 217, 21 U.S. 217, 5 L.Ed. 600. Appellant's claim is for such support "as seems just and reasonable," no specified amount being named, and we have grave doubts that an attachment before judgment would even have been authorized by Section 16–301 in her case. Cf. King v. Fay, D.C.D.C.1958, 169 F.Supp.

934, where the attachment was issued against the husband's vested reversion in a trust fund in a suit to recover a liquidated amount of money due under a property settlement incorporated in a foreign divorce decree. As to the use of a restraining order in lieu of an attachment, see Pennington v. Fourth National Bank, 1917, 243 U.S. 269, 37 S. Ct. 282, 61 L.Ed. 713 (injunction issued at suit of wife against payment out by bank of funds of non-resident husband). Our opinion in Buchanan does not mention the Pennington case. Cf. Western Urn Mfg. Co. v. American Pipe & Steel Corp., 1960, 109 U.S.App.D.C. 145, 284 F.2d 279.

5. Reed v. Reed, 1929, 121 Ohio St. 188, 167 N.E. 684, 64 A.L.R. 1384; Wilson v. Smart, 1927, 324 Ill. 276, 155 N.E. 288; Wilder v. Wilder, 1919, 93 Vt. 105, 106 A. 562; Wesner v. O'Brien, 1896, 56 Kan. 724, 44 P. 1090, 32 L.R.A. 289, and other cases collected in notes at 29 A.L.R. 1381; 64 A.L.R. 1392; and 108 A.L.R. 1302. See also, e. g., Boudwin v. Boudwin, 1936, 320 Pa. 147, 182 A. 536; Failing v. Failing, 1954, 4 Ill.2d 11, 122 N.E.2d 167; Carter v. Carter, 1960, 147 Conn. 238, 159 A.2d 173; Closson v. Closson, 1923, 30 Wyo. 1, 215 P. 485, 29 A.L.R. 1371; Dillon v. Heller, 1888, 39 Kan. 599, 18 P. 693. Some cases have treated a prayer for an injunction or the issuance of a preliminary injunction against sale or disposition of property as the equivalent of a seizure even though directed against a non-resident husband. See, e. g., Benner v. Benner, 1900, 63 Ohio St. 220, 58 N.E. 569.

the man responsible for their support, though owning property within the jurisdiction, has departed and become a non-resident.

For these reasons, we hold that service of process was validly effected in this case. We will therefore follow the course we adopted in Harris v. Harris, 1959, 106 U.S.App.D.C. 282, 272 F.2d 511, of remanding to the District Court with directions (1) to vacate its order quashing the service and dismissing the cause for lack of jurisdiction, and (2) to transfer the case to the Municipal Court for trial in the Domestic Relations Branch.

So ordered.